UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KINGVISION PAY-PER-VIEW CORP.,
LTD.,

                            Plaintiff,                      REPORT AND
                                                                     RECOMMENDATION
     -against-                                     03 CV 1433 (NG)(RML)

CAPRICHO'S TAVERN, INC. d/b/a
SELENA SPORTS BAR and GUILLERMO
RESTREPO,

                            Defendants.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

       By order dated September 14, 2004 the Honorable Nina Gershon, United States District Judge, granted plaintiff's motion for a default judgment and referred this matter to me to determine the amount of damages, interest, and attorney's fees, if any, owed to plaintiff. For the reasons stated below, I respectfully recommend that plaintiff be awarded $11,500 in statutory damages and $1,991 in attorney's fees and costs.

## BACKGROUND AND FACTS

       Plaintiff Kingvision Pay-Per-View Corp., Ltd. ("plaintiff") brought this action in March 2003, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (1991). After the defendants failed to answer the complaint or otherwise appear in the action, plaintiff moved for a default judgment and Judge Gershon granted the motion and referred this matter to me for a report and recommendation on damages, interest, and attorney's fees. By order dated September 28, 2004, I directed plaintiff to file a written inquest submission on or before October 29, 2004 and

defendants to file any opposition on or before December 3, 2004. Plaintiff filed its submission in a timely manner, but again defendants failed to respond.

It is well-settled that a defendant who defaults by failing to answer or otherwise move with respect to the complaint is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 487 (S.D.N.Y. 1999); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 587 (E.D.N.Y. 1997). This court must therefore accept plaintiff's allegations as true. Plaintiff's allegations are as follows:

Plaintiff is a Delaware corporation licensed to broadcast the September 29, 2001 championship prize-fight between Felix Trinidad and Bernard Hopkins via closed circuit transmission from Madison Square Garden in New York City ("the Event"). (Compl. ¶¶ 4, 7.) Plaintiff agreed to broadcast the Event to closed circuit establishments in New York, such as restaurants, lounges, theaters, and the like, for its own commercial gain. (Id. ¶ 7). The Event was not intended for general public viewing. (Id. ¶ 9.) Pursuant to the agreement, plaintiff expended time and resources to market the Event to area customers who could only receive and display the Event by entering into a contract with plaintiff for a fee. (Id. ¶ 10.) The transmission of the event was electronically scrambled (see 47 U.S.C. § 561(c)) so that one would need an electronic decoder device in order to see the picture. The fee entitled a customer to receive such a device, and to display the Event to its patrons. (Id. ¶¶ 11-13.) According to plaintiff, the fee is based on the establishment's seating capacity. (Plaintiff's Memorandum of Law, dated July 12, 2004 ("Pl.'s Mem."), at 9.)

Plaintiff sent a private investigator, Elvy Lantigua, to Capricho's Tavern, Inc. d/b/a Selena Sports Bar, at 87-35 Britton Avenue in Elmhurst, New York (the "Establishment"), during the broadcast of the Event. (Affidavit of Elvy Lantigua, sworn to October 1, 2001 ("Lantigua Aff.").) Lantigua observed five televisions showing the Event with approximately 30 patrons in the Establishment. (Id.) Defendants had not contracted with plaintiff to receive or display the Event; nor were they otherwise authorized to do so. (Compl. ¶ 12.) Plaintiff asserts that the only way defendants could have shown the Event in the Establishment was if a defendant or an agent committed a wrongful act to receive the satellite signal. (Id. ¶ 14.) Plaintiff seeks statutory damages of $10,000 under 47 U.S.C. § 553(3)(A)(ii) and $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II); maximum damages of $50,000 for willful misappropriation for personal or private financial gain under § 553(3)(B) and $100,000 under § 605(e)(3)(C)(ii); and attorney's fees and costs totaling $1,960.00 under § 605(e)(3)(B)(iii).

**DISCUSSION**

A. Damages under the Communications Act

1. Statutory Damages

Plaintiff appears to be seeking full statutory damages under *both* § 553 and § 605,[1]

---

[1] Both statutes permit an aggrieved party to elect to recover either (1) actual damages and lost profits, or (2) statutory damages (see 47 U.S.C. §§ 605(e)(3)(C)(i); 553(c)(3)(A)), but § 605 contains a more severe statutory damages provision. Specifically, 47 U.S.C. § 553(c)(3)(A)(ii) allows a party to recover for "*all* violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just," while 47 U.S.C. § 605(e)(3)(C)(i)(II) allows for statutory damages for "*each* violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." (emphasis added.)

*i.e.*, double recovery.  (See Compl. at 7-8; Pl.'s Mem. at 14).  However, this would violate "the general principle that precludes double recovery." Vermont Microsystems, Inc. v. Autodesk, Inc., 138 F.3d 449, 452 (2d Cir. 1998).  Moreover, the Second Circuit has held that where a defendant is found to have violated both of these statutes, the court should award damages pursuant to § 605. International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993); cf. International Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996); see also Time Warner Cable of New York City v. U.S. Cable T.V., Inc., 920 F. Supp. 321, 329 (E.D.N.Y. 1996).

Therefore, if plaintiff's allegations demonstrate that defendants violated § 605 of the Communications Act, damages are properly assessed under that section.[2]  Section 605(a) states in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Satellite cable programming clearly falls under this law.  See 47 U.S.C. § 605(d)(3). Additionally, there is a substantial body of case law applying § 605 to the unauthorized receipt of cable television programming both where a defendant sold or distributed descramblers without authorization

---

[2] Since I find that defendants did violate § 605, there is no need for a discussion of the requirements for an award of damages under § 553.

(see Sykes, 75 F.3d at 133; Cablevision Sys. Corp. v. Muneyyrici, 876 F. Supp. 415, 425 (E.D.N.Y. 1994); Cablevision Sys. Corp. v. DePalma, No. 87 CV 3528, 1989 WL 8165, at *3 (E.D.N.Y. Jan. 17, 1989)) and where a defendant intercepted the signal in a place of business and displayed a specific event or program publicly without authorization. See Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. 107, 109 (E.D.N.Y. 1997); Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp., No. 88 CV 2835, 1991 WL 58350, at *1 (E.D.N.Y. Mar. 20, 1991). Thus, § 605 protects against theft of satellite communications such as the Event.

Here, plaintiff has elected to recover statutory damages, as opposed to actual damages. Section 605 provides that an aggrieved party may recover statutory damages "for each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just. . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II). Section 605 also allows for an increase in damages of not more than $100,000 for conduct that is committed willfully and for the purpose of obtaining commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993). As a yardstick for assessing profits, some courts faced with the unauthorized commercial receipt and broadcast of a cable program have assessed damages based on the number of patrons in the establishment at the time of transmission. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 WL 1488110, at *2 (S.D.N.Y. June 30, 2004) (awarding $50 per patron against establishments for unauthorized display of pay-per-view boxing match); Googies Luncheonette, 77 F. Supp. 2d at 490 (same); New Contenders, Inc. v. Diaz Seafood Corp.,

No. 96 CIV. 4701, 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997) (awarding $300 per patron under § 605); Taco Rapido Restaurant, 988 F. Supp. at 111 (awarding $50 per patron against restaurant for unauthorized display of pay-per-view boxing match); Kingvision Pay-Per-View Corp. v. Prime Time Saloon, Inc., No. 95 CV 1442 (E.D.N.Y. Sept. 30, 1996) (awarding $50 per patron, plus $10 per patron to reflect a $10 cover charge); Cablevision Sys. Inc. v. Doudlesox, Inc., No. 89 CV 0500 (E.D.N.Y. Aug. 24, 1989) (awarding $30 per patron). Others have simply assessed a flat damage amount per violation. See Home Box Office v. Gee-Co. Inc., 838 F. Supp. 436, 440 (E.D. Mo. 1993) (awarding statutory damages of $1,000 plus an additional $1,000 for willfulness, to redress violations of § 605); Home Box Office v. Carlim, Inc., 838 F. Supp. 432, 435 (E.D. Mo. 1993) (use of a "pirate chip" to unscramble satellite signal of a boxing match warranted statutory damages of $1000 to redress willfulness).

As one court has explained, the per-patron valuation "is based on a theory of rough justice" that the patrons viewing the event without access to the unauthorized showing "would have ordered it themselves [at a cost of approximately $50 each]." Googies Luncheonette, 77 F. Supp. 2d at 490. "Plaintiff is thus fully compensated for any loss it suffered," and by divesting the defendant of any profits, "it assures that [defendant] reap[s] no benefit from unlawful action." Id. The per-patron calculation can also be viewed as a way of divesting the defendant of any profits earned on the sale of food and drink. Id. To the "extent the $50 sum per patron may reflect a greater amount than plaintiff would have legitimately obtained, in that not every patron would have ordered the match individually, whatever extra it represents can be seen to encompass the defendant's profits on the sale of food and drink." See id. (plaintiff provided no evidence of amount of food and beverages consumed by patrons

and consequently no award could be made for those sales). The per-patron approach, "which takes into account the varying amounts defendants can be assumed to have profited from increased sales of food and drink during their illegal display of the program, is entirely sensible and brings order to a damages determination that might otherwise be quite arbitrary." New Contenders, 1997 WL 538827, at *2.

Since there is evidence in the record as to the number of patrons who were present in the Establishment on the occasion described in the complaint, the per-patron valuation is appropriate here. According to the report of the investigator, there were approximately thirty (30) patrons present during the broadcast of the Event. I therefore respectfully recommend that plaintiff be awarded $1,500, which represents thirty (30) patrons at $50 per patron.

In addition, plaintiff is entitled to recover the sublicense fee it would have charged defendants for permission to broadcast the Event. According to plaintiff, the fee would have been approximately $2,500, based on the capacity of the Establishment. (Pl.'s Mem. at 9.) I therefore recommend that $2,500 be added to the per-patron amount, resulting in a total award of $4,000.

2. Enhanced Damages for Willfulness

Plaintiff seeks further damages under 47 U.S.C.§ 605(e)(3)(C)(ii), which provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, . . . by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Courts usually award enhanced damages where the evidence shows that the defendant

sold decoding equipment for pecuniary gain (see Sykes, 75 F.3d at 133; Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 851-52 (11th Cir. 1990)), or intercepted signals at a place of business, usually a tavern or restaurant, "where certain events . . . [were] shown to the public," such as prizefights or other sporting events. McGinn, 817 F. Supp. at 320; accord Prime Time Saloon, No. 95-1422 (DGT), slip op. at 9-10; Maxie's N. Shore Deli, 1991 WL 58350, at *2; De Palma, 1989 WL 8165, at *6; Carlim, Inc., 838 F. Supp. at 435. Plaintiff's request should be granted.

Defendants never contracted for the right to broadcast the Event and, accordingly, were not authorized to intercept, receive or transmit communication of the Event. (See Compl. ¶ 12.) In order for defendants to have received the Event, someone connected with the Establishment had to have engaged in some deliberate act. (See Compl. ¶¶ 10 – 14.) Since the transmission of the Event was electronically coded and the Establishment was not provided with the necessary equipment to receive the transmission, defendants must have used an illegal decoding device or some other unlawful means. (Id.) Therefore, defendants' conduct was willful. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"); Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) ("In light of the fact Congress and most states have seen fit to impose both criminal and civil liability on persons who misappropriate such communication signals, and the wide availability of cable and satellite services for a fee, most persons cannot now seriously argue that they did not understand the significance of using an unauthorized descrambling device"). In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See

Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

Moreover, the investigator's affidavit states that the Event was being shown on five television sets, and this court takes judicial notice that these defendants are repeat offenders, having been sued for cable theft in at least four other cases in the Eastern District of New York (00-CV-6504, 01-CV-3422, 02-CV-1752, 03-CV-1429). On the other hand, plaintiff does not allege that defendants advertised the display of the Event in order to entice customers into the Establishment.

In light of the circumstances surrounding the display, I respectfully recommend that an additional award of $7,500 in enhanced damages, *i.e.*, a factor of five times the per-patron amount, be assessed against defendants for willful violation of the Communications Act. See Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004 WL 744226, at *4 (S.D.N.Y. Apr. 5, 2004) ("Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize a defendant for willful acts"); Googies Luncheonette, 77 F. Supp. at 491 (imposing additional damage award of $3,000, or three times the base award, against defendant with no record of any other theft of cable services or other intellectual property, to "serve as a reasonable deterrent against future violations"); see also Kingvision Pay Per View Corp. v. Lempira Restaurant Night Club, 98 CV 2160 (E.D.N.Y. Feb. 16, 1999) (awarding $3,000 in enhanced damages where defendant displayed prizefight to approximately 31 patrons on two television sets); Taco Rapido Restaurant, 988 F. Supp. at 112 (imposing enhanced damages award of $5,000 where defendant displayed boxing match to approximately 75 patrons on one television set); Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (increase of five times the base award for willful acts).

The complaint names both the principal and the Establishment as defendants. I recommend that plaintiff's award be limited to a single recovery of $11,500 ($4,000 compensatory plus $7,500 enhanced). In other words, defendants should be held jointly and severally liable for a single award of $11,500 in statutory damages. See Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *5 (E.D.N.Y. May 21, 2002).

   3. Attorney's Fees and Costs

As the prevailing party, plaintiff is also entitled to an award of reasonable attorney's fees and costs in this action. 47 U.S.C. § 605(e)(3)(B)(iii). An award of full costs, including reasonable attorney's fees, to the prevailing party is mandated for a violation of § 605. Sykes, 997 F.2d at 1008; U.S. Cable T.V., Inc., 920 F. Supp. at 329.

In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying "relevant dates, time spent and work done." Broadcast Music, 919 F. Supp. at 661 (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994); Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). However, courts recognize that "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy [this requirement] and suffice to permit recovery of attorneys' fees," as do "typewritten transcriptions of the original handwritten time sheets filled out by attorneys. . . ." David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991); see also Cruz, 34 F.3d at 1160 (typed summaries of hours drawn from contemporaneous time records, without

submission of actual time records, was sufficient to support attorney's fees application).

Here, plaintiffs' counsel has submitted an affidavit in support of their request for attorney's fees, which contains a summary of counsel's time records. (See Affidavit of Jeanne Ellen Forster, Esq., sworn to July 12, 2004.) That summary indicates that Ms. Forster worked 4.2 hours on this matter at the rate of $300 per hour, and a paralegal worked 2.2 hours on the case at a rate of $100 per hour. The hourly rate plaintiff's counsel requests is somewhat above normal for comparable work in this area. See, e.g., Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *6 (E.D.N.Y. Mar. 28, 2003) (awarding $750 in attorney's fees, reflecting 3.75 hours of work charged at the rate of $200 per hour); Cablevision Systems New York City Corp. v. Miller, No. 01CIV4355, 2002 WL 1966941, at *5 (S.D.N.Y. July 23, 2002) (hourly rate of $165 held reasonable for attorneys specializing in cable theft cases); Googies Luncheonette, 77 F. Supp. 2d at 491 (hourly rates between $120 and $190 held reasonable); Olmo, 977 F. Supp. at 587 (awarding attorney's fees with rates ranging from $110 to $190 per hour). On the other hand, the number of hours for which counsel seeks compensation is below normal. See, e.g., Time Warner Cable v. Foote, No. CV-99-4974, 2002 WL 1267993, at *8 (E.D.N.Y. Mar. 22, 2002) (contemporaneous time records supported eight hours of attorney billing on cable theft case); Time Warner Cable v. Herrera, No. CV 98-7534, 2001 WL 1590519, at *6 (E.D.N.Y. Oct. 30, 2001) (approximately two hours by attorneys and eight and a half hours by paralegal staff for similar litigation work found reasonable). As a result, the total amount requested is reasonable. I therefore recommend that plaintiff be awarded $1,480 in attorney's fees.

Plaintiff's counsel's request for costs is also reasonable, with one exception. In addition

to seeking costs for filing fees, service of process, postage, and telephone calls, counsel seeks $600 for photocopies. The list of expenses indicates only that the firm made 800 photocopies at a cost of $0.75 per page; it does not explain what was copied. Nothing in the court record is close to 800 pages long. Without an explanation to substantiate this expense, I recommend that it be reduced to $100, and that plaintiff be awarded total costs of $511.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff be awarded $11,500 in statutory damages and $1,991 in attorney's fees and costs, with leave to submit further documentation of the photocopying charges. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Gershon and to my chambers, within ten (10) business days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); See also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
April 5, 2005